**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**HERSHISER SIGNATURE PROPERTIES, et al., Defendants.**

No. 89–CV–72345.

United States District Court, E.D. Michigan, S.D.

Nov. 8, 1991.

Lawrence M. Dudek, Miller, Canfield, Paddock and Stone, Detroit, Mich., for plaintiff.

David S. Snyder, Snyder & Handler, Southfield, Mich., I. William Cohen, Lori L. Tobis, Pepper, Hamilton & Scheetz, Detroit, Mich., for defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Before me is plaintiff's motion for summary judgment on Count II of the Complaint. Plaintiff Federal Deposit Insurance Corporation ("FDIC") is the holder of a $10.5 million promissory note assigned to and assumed by defendant Hershiser Signature Properties ("Hershiser Signature Properties") and personally guaranteed by the individually-named defendants. There is no question that: (1) Hershiser Signature Properties was assigned, assumed and subsequently defaulted on a valid promissory note now held by plaintiff; (2) the individually-named defendants executed valid personal guaranties as to this note; and (3) defendants have failed to allege any valid defense to the enforcement of either the note or the guaranty. Therefore, plaintiff's motion is GRANTED.

### I. BACKGROUND

FDIC filed a two-count complaint alleging: (1) that Hershiser Signature Properties defaulted on a $10.5 million dollar promissory note and; (2) that individually-named defendants Orel Hershiser, Robert Forte, Seymour Mandell and the Orel Hershiser Trust are jointly and severally liable for the amount as a result of a valid Guaranty of Payment of the Note ("Guaranty"). Plaintiff now moves for summary judgment on Count II. Most of the relevant facts of this case were agreed to by the parties in a Consent Order Regarding Stipulated Facts and Admissions, entered on June 29, 1990. They are as follows:

On January 17, 1985, Westwood Mortgage Corporation ("Westwood") loaned $800,000 to Orel and Mildred Hershiser ("the Hershisers") upon execution of a promissory note and a Mortgage, Security Agreement, Assignment of Rents and

Leases and Financing Statement covering certain real property located in Southfield, Michigan. On May 29, 1985, the principal amount of the loan was increased to $10.5 million. At the same time, the Hershisers and Westwood executed a new promissory note ("Note") and an amendment to the Mortgage, Security Agreement, Assignment of Rents and Leases and Financing Statement ("Amended Mortgage").

On March 25, 1988, the Hershisers assigned all of their rights and obligations under the Note and Amended Mortgage to Hershiser Signature Properties. Concurrently, defendants Orel Hershiser, Robert Forte, Seymour Mandell and the Orel Hershiser Trust, jointly and severally, executed the Guaranty. The parties also executed a full and complete release of any and all claims existing against Westwood, its successors and assigns arising out of Westwood's handling of the Note (the "Release").

In June 1988, Westwood's interest in the Hershiser Note was assigned to Western Federal Savings and Loan Association ("Western Federal"), Westwood's parent institution. In August 1988, Western Federal was declared insolvent and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed receiver of its assets. FSLIC transferred Western Federal's assets, including the Hershiser Note, to Sunbelt Savings ("Sunbelt"). On November 10, 1988, the entire unpaid balance of the Note became due and owing. Defendant Hershiser Signature Properties failed to pay the amount due. On December 30, 1988, Sunbelt assigned the Note to FSLIC in its corporate capacity. FSLIC thus became the holder of the Note and Amended Mortgage, acquiring the right to enforce the obligations due thereunder. The Note was subsequently transferred to the FSLIC Resolution Fund by operation of law.

FDIC brings this action as the managing agent for the FSLIC Resolution Fund. The parties have stipulated that "FDIC paid value for and is the holder of the Note and Amended Mortgage, is the real party-in-interest to bring this action, and has standing to enforce collection of the Note and Guaranty and to foreclose the Amended Mortgage." Consent Order Regarding Stipulated Facts and Admissions, June 4, 1990, para. 17. The Note remains due and owing in the amount of $10,334,143.97 in principal and over $2,800,000 in interest.

## II. ANALYSIS

In order to prevail on its motion for summary judgment on Count II, Plaintiff must show that, examining all facts in a light most favorable to defendants, there is no genuine issue as to any material fact and it is entitled to judgment on the Guaranty as a matter of law. Federal Rule of Civil Procedure 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). I find that plaintiff has met that burden.

Defendants concede by way of stipulation that: (1) Hershiser Signature Properties has defaulted on a $10.5 million Note now held by FDIC; (2) defendants Hershiser, Forte, Mandell and the Orel Hershiser Trust executed the Guaranty, rendering them jointly and severally liable in the event of such default; (3) FDIC paid value for and is the holder of the Note and Amended Mortgage, having the right to enforce both it and the Guaranty; and (4) on March 25, 1988, the parties did execute the Release. Thus, FDIC is entitled to summary judgment on the Guaranty unless defendants can raise some question of material fact as to a valid defense to its enforcement arising from the conduct of someone other than Westwood.

Defendants claim that the banking institutions and agencies involved in this transaction—specifically Westwood and FSLIC—have acted wrongfully or negligently in administering the underlying loan, and that such conduct forms a defense to enforcement of the Note and Guaranty. However, defendants released Westwood, its successors and assigns from any liability arising from Westwood's administration of the loan. Thus, defendants are barred from raising Westwood's conduct as a defense to enforcement. As to FSLIC, the only wrongful conduct alleged by defendants is standard institutional de-

lay in gaining approval of action on the Note. Defendants rely on an Internal Report of Comerica Bank, dated August 31, 1989, which states that "Part of the problem was FSLIC which was slow to adopt procedures to approve action on Westwood's troubled loans." However, that document refers to a proposed extension and restructuring of the loan in December 1986, which was not completed because the partnership never signed the commitment letter. That document points out that:

"Also, Mandell and Forte slowed progress by constant renegotiation. *We later discovered that probably the main reason for the delay was that there were negotiations underway to remove Gadient from the partnership.* Gadient proved very difficult to contact to conclude the negotiations so eventually the other three formed a new partnership called Hershiser Signature Properties." (emphasis added).

Thus, any alleged delay by FSLIC is insufficient to defeat enforcement of the Guaranty.

Defendants also assert by way of affidavit that at times they did not know whom to contact regarding their loan. *See* Affidavit of Seymour Mandell, para 18. However, defendants do not specifically allege any wrongdoing on the part of FSLIC. Rather they assert their own confusion about the status of the Note as justification for defeat of the Guaranty. In fact, defendants fail to allege wrongdoing by the FSLIC with any specificity whatsoever. Defendants' vague allegations of delay and confusion are simply not sufficient to raise a question of material fact as to any defense to the enforcement of the Guaranty.

■ Even if defendants could raise questions of material fact as to some defense to enforcement arising out of the conduct of FDIC's predecessors in interest, I find that FDIC is effectively a holder in due course of this Note. The United States Court of Appeals for the Sixth Circuit has repeatedly held that FDIC is the equivalent of a holder in due course of notes it acquires in purchase and assumption transactions in good faith, for value and without actual notice of any defenses against the notes. *See, e.g., FDIC v. Wood,* 758 F.2d 156, 161 (6th Cir.1985), *cert. denied* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *FDIC v. Aetna Casualty & Surety Co.,* 947 F.2d 196 (6th Cir.1991).

The parties have stipulated that FDIC took the Note for value as part of a purchase and assumption transaction and is the holder of the Note and Amended Mortgage. Defendants argue however, that the Holder in Due Course doctrine does not apply here because the Note contains a variable interest rate and, hence, is nonnegotiable. I note again, that the United States Court of Appeals for the Sixth Circuit has held that based on the objectives of the national banking insurance system, when FDIC acquires notes in purchase and assumption transactions it is entitled to status *equivalent to* that of a holder in due course. *See, e.g., Wood,* 758 F.2d at 161. Thus, it is not clear that application of holder in due course principles to this case depends on a finding that the Note is negotiable. Even should some distinction be warranted, however, I find that for these purposes the Note is a negotiable instrument.

■ To be a negotiable instrument under Article Three of the Uniform Commercial Code, the Note must contain a promise or order to pay a "sum certain" in money. Defendants argue that a variable interest rate renders the amount of the Note uncertain. I disagree. The purpose of requiring that the amount to be repaid be a "sum certain"—that is, calculable from the terms of the note—is to ensure that strangers to the transaction are not disadvantaged, thus protecting the commercial value of the note.

The United States Court of Appeals for the Sixth Circuit has not addressed whether a variable rate note is a negotiable instrument. However, given the court's reasons for providing FDIC with status equivalent to that of a holder in due course, *see, e.g., Wood,* 758 F.2d at 159–161, I find that where, as here, the variable interest rate is tied to a readily ascertainable commercial or financial index by way of a specific

formula such that the interest owed can be readily calculated, the Note does contain a promise to pay a "sum certain."

Defendants cite a case from the United States Court of Appeals for the Fifth Circuit, *Sunbelt Savings v. Montross*, 923 F.2d 353 (5th Cir.1991), in which the court held that a variable rate interest loan was not negotiable. However, upon rehearing *en banc*, the court took no position on the effect of the variable interest rate on the negotiability of the note, and pointed out that, "The maker of the note gave other reasons for the note being non-negotiable, and the case was presented on the appeal with both parties accepting the non-negotiability of the note." 944 F.2d 227 (5th Cir.1991). Here, the parties do not accept that the Note is non-negotiable, and there is no reason offered for reaching such a conclusion other than the variable interest rate. Thus, *Montross* does not lend any authority to defendants' assertions in this case.

■ Defendants also argue that FDIC cannot be a holder in due course, because it acquired the Note with knowledge of preexisting defenses. Even if defendants were able to establish that they have some defense precluding enforcement of the Note arising out of conduct by someone other than Westwood, they have not produced any evidence showing that FDIC had actual knowledge of such defense at the time it entered into the purchase and assumption agreement. *Wood*, 758 F.2d at 162. FDIC is presumed to have no knowledge of any defenses when it acquired the Note. *Wood*, 758 F.2d at 162; *FDIC v. Armstrong*, 784 F.2d 741, 745 (6th Cir. 1986). Further, FDIC cannot be deemed to have actual knowledge based merely on information that could have been found in the banking files. *Wood*, 758 F.2d at 162; *FDIC v. The Cremona Co.*, 832 F.2d 959 (6th Cir.1987).

The execution of the Release eliminated any defenses arising out of Westwood's conduct in administering the loan. Given that the Release was executed only a short time before FDIC acquired the Note, and that defendants make only vague allega-

tions as to any wrongdoing by FSLIC, there is no evidence that FDIC had any knowledge of any defenses at the time it acquired this Note.

## III. CONCLUSION

In sum, it is beyond dispute that Hershiser Signature Properties was assigned and did assume the obligations of a valid $10.5 million Note and Amended Mortgage; that such Note has become due and owing; that defendant Hershiser Signature Properties has defaulted on the Note; and that defendants Hershiser, Forte, Mandell and the Orel Hershiser Trust did jointly and severally execute a Guaranty of Payment on the Note. Further, inasmuch as defendants have failed to raise any question of material fact as to any defense to enforcement of the Note or Guaranty, plaintiff is entitled to summary judgment on Count II for the full amount of the Note, principal and interest, now due and owing.

For the foregoing reasons, plaintiff's motion for summary judgment on Count II of the complaint is hereby GRANTED.

IT IS SO ORDERED.