The RESOLUTION TRUST CORPORATION, as Conservator for Sunbelt Federal Savings, FSB, Plaintiff,

v.

Glenn TOLER, Jr., et al., Defendants,

v.

The RESOLUTION TRUST CORPORATION, as Receiver for Sunbelt Federal Savings, FSB, Intervenor/Counter–Defendant.

Civ. A. No. CA 3–91–1328–G.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 10, 1991.

**650**

Kenneth Eugene Broughton, Jr., Patrick Olin Strauss, Haynes & Boone, Dallas, Tex., for plaintiff.

Steven Dennis Goldston, Calhoun Gump Spillman & Stacy, Dallas, Tex., for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion for summary judgment of plaintiff Resolution Trust Corporation ("the RTC"). For the reasons stated below, the motion is granted.

### I. BACKGROUND

On April 23, 1986, defendants executed a promissory note evidencing an indebtedness to First City Savings Association ("First City") in the amount of $160,000.00. The note, which was secured by an irrevocable letter of credit dated April 22, 1986 and issued by Vernon Savings Association for the benefit of First City ("the letter of credit"), provided for interest at a variable rate to be determined by reference to the prime commercial rate established by Inter-First Bank Fort Worth, N.A. The note was due and payable on April 21, 1987. Under its terms, First City had the option, upon maturity, of drawing on the letter of credit or declaring the note, together with accrued interest, immediately due and payable. Although defendants failed to pay the note when it matured, First City did not draw on the letter of credit, which expired by its terms on April 22, 1987.

Sunbelt Savings, FSB ("Sunbelt Savings") later acquired the note from the Federal Savings and Loan Insurance Corporation ("FSLIC"), which was acting as the receiver for First City. On November 16, 1990, Sunbelt Savings instituted the present action.[1] Subsequent to the filing of this action, Sunbelt Federal Savings, FSB ("Sunbelt Federal") succeeded to the interest of Sunbelt Savings, and on August 6, 1991, the RTC as conservator for Sunbelt Federal was substituted as plaintiff in this action.

---

1. The case was initially commenced in the 162nd Judicial District Court of Dallas County, Texas but was removed to the U.S. District Court for the District of Columbia. It was transferred here on a change of venue on June 21, 1991.

## II. ANALYSIS

 Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56. As the Fifth Circuit noted in *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir.1988), summary judgment is proper if the moving party can demonstrate that it is entitled to judgment as a matter of law because no actual dispute exists regarding an essential element of the non-movant's case. A movant for summary judgment need not, however, support the motion with evidence negating the opponent's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

 The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986). The Fifth Circuit has held that the moving party is entitled to summary judgment when the non-moving party fails to make a sufficient showing of proof, *id.* at 1195–98, although all evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Company*, 904 F.2d 290, 292 (5th Cir.1990). Summary judgment may be entered against a party if after adequate time for discovery, the party fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, above, 477 U.S. at 324–26, 106 S.Ct. at 2553–54.

Relying on the federal holder in due course doctrine, the RTC asserts that it is entitled to summary judgment merely by showing (1) that it holds the note at issue, (2) that the note is due, and (3) that the note is unpaid. Defendants respond, citing *Sunbelt Savings, FSB Dallas, Texas v. Montross*, 923 F.2d 353 (5th Cir.1991), that because the note at issue provides for a variable rate of interest, it is not a negotiable instrument, and therefore the RTC cannot be a holder in due course. *Id.* at 356. As a result, defendants maintain, summary judgment cannot be granted because the RTC is remitted to a contract cause of action and it has not produced evidence showing that no material issue of fact exists with regard to each element of a claim for breach of contract.

In *Montross*, the Fifth Circuit declined to extend to non-negotiable instruments the protections of the federal holder in due course doctrine, which estops the maker of a negotiable instrument from asserting against the subsequent holder any personal defenses to payment of the instrument. *Montross*, 923 F.2d at 356–57. The court reasoned that such an extension would unfairly burden the makers of such notes, who "had no expectation that [the] holder in due course doctrine would strip them of their defenses" and "would defeat the reasonable commercial expectations of the variable interest note makers" *Id.* at 356, 357.

Subsequent to the panel opinion in *Montross*, the Fifth Circuit en banc reiterated that a non-negotiable note is not entitled to holder in due course status under federal law but declined to "take [a] position on the effect of the variable interest rate on the negotiability of the note."[2] *Resolution Trust Corporation v. Montross*, 944 F.2d 227, 228 (5th Cir.1991) (*en banc*).

Under Texas law, it is uncertain whether a note that provides for a variable rate of interest is deemed to be non-negotiable. The Fifth Circuit certified this question to the Supreme Court of Texas in *Ackerman v. Federal Deposit Insurance Corporation*, 930 F.2d 3 (5th Cir.1991). Accordingly, it is unclear at present whether the RTC is entitled to the protections of the federal holder in due course doctrine.

 If the court assumes that variable rate interest notes are non-negotiable, the

---

**2.** The court refused to rule on the negotiability of the note at issue in *Montross* because the parties did not contest the non-negotiability of the note on appeal. *Montross*, 944 F.2d at 228.

RTC must rely on a breach of contract theory to recover on the note. This theory requires the RTC to show that: (1) a valid agreement exists, (2) First City performed or tendered performance pursuant to the agreement, (3) defendants failed to perform under the agreement, and (4) the RTC was damaged as a result of defendants' failure to perform. *See Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, no writ). Defendants argue that the RTC has failed to establish the existence of all of these elements because First City's action in declaring the note due and payable without first drawing on the letter of credit before its expiration does not constitute performance of the terms of the note. They base this argument on a letter sent by First City to the defendants in which First City declared its intention to draw on the letter of credit if full payment of the note were not received by April 21, 1987.

The note executed by First City and the defendants states that in the event of a default in payment of the note, "the holder hereof may, *at its option,* declare the entire principal balance of ... this Note immediately due and payable without notice or demand *and/or* draw on the Letter of Credit ... *at the option of the holder"* (emphasis added). This language clearly contemplates that First City has the exclusive right to determine whether to draw on the letter of credit, but does not obligate it to do so, before declaring the note due and payable.

■■■■ In *D'Oench, Duhme & Co., Inc. v. Federal Deposit Insurance Corporation,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Court held that secret side agreements between a failed financial institution and the maker of a note are not enforceable against the FDIC on the ground that to enforce such agreements would undermine the ability of bank examiners to rely on a bank's records as an accurate reflection of the bank's financial condition. The *D'Oench, Duhme* doctrine applies to transactions where the maker of a note enters into a secret agreement with a banking institution that is not reflected in

the bank's records of the transaction and that has a tendency to deceive banking authorities. *Id.* at 458, 460, 62 S.Ct. at 679–81. The *D'Oench, Duhme* doctrine also serves to protect an institution to which the FDIC has subsequently transferred the instrument. *Federal Savings and Loan Insurance Corporation v. Murray,* 853 F.2d 1251, 1254 (5th Cir.1988).

■■■ The letter relied on by the defendants, even if it evidences an intent on the part of First City to draw on the letter of credit before declaring the note due and payable, is unenforceable under the *D'Oench, Duhme* doctrine. This side agreement was not part of First City's records regarding this transaction, and the RTC was entitled to rely on the promissory note as the complete agreement between First City and the defendants. *See Federal Deposit Insurance Corporation v. Hamilton,* 939 F.2d 1225, 1230 (5th Cir. 1991). The court therefore concludes that First City was not required to draw on the letter of credit, that such action was merely an option pursuant to the express terms of the note, and that the *D'Oench, Duhme* doctrine renders unenforceable any subsequent representation by First City that it would draw on the letter of credit if the note were not paid. Accordingly, the defendants' argument that the RTC has not shown that performance was rendered under the terms of the agreement, and the defendants' counterclaim for breach of contract for impairment of collateral, must fail.

## III. CONCLUSION

While the court makes no ruling concerning the negotiability of the promissory note, it concludes that the RTC has established without dispute all elements necessary to recover in an action for breach of contract. The court rejects defendants' contention that First City's failure to draw on the letter of credit constituted non-performance and impairment of collateral because the *D'Oench, Duhme* doctrine will not allow consideration of that contention on the facts presented here. Accordingly,

the RTC motion for summary judgment is GRANTED.

SO ORDERED.